U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 AUG 19 PM 1:14

CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CHARLES M., )
 )
  Plaintiff, )
 )
v. ) Case No. 5:18-cv-92
 )
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
 )
  Defendant. )

**OPINION AND ORDER**
(Docs. 6, 7)

Plaintiff Charles M. brings this action under 42 U.S.C. § 405(g), requesting reversal of the decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB). (Doc. 1.) Currently pending is Plaintiff's motion to reverse the decision of the Commissioner (Doc. 6) and the Commissioner's motion to affirm (Doc. 7). For the reasons stated below, Plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED.

**Background**

Plaintiff was 50 years old on his alleged onset date of December 9, 2013.[1] (AR 32.) He claims he is unable to work due to chronic pain and loss of mobility as a result of a labral tear in his right hip, nerve damage in his groin, and degenerative disc disorder in his neck and lower back. (AR 42–50, 208, 222.)

Plaintiff completed approximately ten years of schooling and has a GED. (AR 34–35.) Between 2006 and 2014, he worked as a sales associate at Best Buy. (AR 36–38, 231.) He has

---

[1] He initially alleged that he was disabled as of December 24, 2012 (Doc. 158), but later amended his alleged onset date to December 9, 2013, which is the day he turned 50 (AR 32).

also worked as a security guard, assistant manager of a video store, municipal utilities locator, municipal facilities attendant, and manager of a shoe store. (AR 231.)

In March 2007, Plaintiff developed a right inguinal hernia and injured his right hip while working at Best Buy. (AR 37, 43, 171.) At his hearing on March 23, 2017, he testified that he underwent hernia repair surgery about a month after sustaining the injury, and that the operation damaged nerves in his groin. (AR 43–44.) Treatment notes indicate that he later received ilioinguinal and hypogastric nerve blocks and ilioinguinal nerve bisection surgery. (AR 362.) In March 2010, he underwent an arthroscopic labral debridement of his right hip. (AR 321.)

Plaintiff testified that he experiences persistent pain in his hip and groin that is exacerbated by physical activity such as "[m]oving, walking, [or] sitting"; wearing a belt; and standing. (AR 46–48.) He further testified that his right hip freezes if he sits or walks for extended periods of time, which caused him to fall and break his ankle in December 2016. (AR 50–51.) He estimated he could stay on his feet for about three hours total over the course of a workday. (AR 52.) He asserted that he can sit for 5 to 20 minutes before experiencing an acute burning sensation in his thigh, which he can alleviate by standing up or changing positions. (AR 53–54.) He testified that he has gained around 65 pounds since he was injured in 2007 and that his weight aggravates his symptoms. (AR 61.)

Plaintiff filed an application for DIB on or about May 27, 2015. (*See* AR 14, 75, 85, 86.) His claim was denied initially on August 5, 2014 (AR 75–84), and on reconsideration on January 20, 2015 (AR 86–92). He requested a hearing, and Administrative Law Judge (ALJ) Edward Malvey conducted a hearing on March 23, 2017. (AR 29–74.) Plaintiff appeared at the hearing and was represented by Attorney Craig Jarvis. (AR 29.) Vocational Expert (VE) Elizabeth Laflamme also testified. (AR 61–72.) ALJ Malvey issued an unfavorable decision on

May 9, 2017. (AR 14–22.) The Appeals Council denied Plaintiff's request for review (AR 1), and he appealed to this court on June 5, 2018 (Doc. 1).

## ALJ Decision

Social Security Administration regulations set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). First, the Commissioner considers "whether the claimant is currently engaged in substantial gainful activity." *Id.* Second, if the claimant is not currently engaged in substantial gainful activity, then the Commissioner considers "whether the claimant has a severe impairment or combination of impairments." *Id.* Third, if the claimant does suffer from such an impairment, the inquiry is "whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments." *Id.* Fourth, if the claimant does not have a listed impairment, the Commissioner determines, "based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment." *Id.*

Finally, if the claimant is unable to perform past work, the Commissioner determines "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see* 20 C.F.R. § 404.1520. The claimant bears the burden of proving his case at steps one through four. *McIntyre*, 758 F.3d at 150. At step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Employing that sequential analysis in his May 9, 2017 decision, ALJ Malvey first determined Plaintiff has not engaged in substantial gainful activity from his alleged onset date of December 9, 2013 through September 30, 2014, the date he last met the insured status

requirements of the Social Security Act. (AR 16.) At step two, the ALJ found that Plaintiff had three severe impairments through the date last insured: lumbago, chronic pain syndrome, and obesity. (AR 16–17.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, meets or medically equals a listed impairment. (AR 17.)

Next, the ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity (RFC) to perform the light work as defined in 20 C.F.R. § 404.1567(b)[2] with the following exceptions: "he cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; and can occasionally stoop, kneel, crouch, and crawl." (AR 17.) Because "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR 83–10, 1983 WL 31251, at *6 (1983), the ALJ implicitly found that Plaintiff retained the ability to stand and walk for a total of six hours in an eight-hour workday.

At step four, the ALJ found that Plaintiff was able to perform his past relevant work as a security guard, commercial and industrial, through the date last insured. (AR 21.) The ALJ accordingly concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from December 9, 2013 through September 20, 2014. (AR 22.)

---

[2] The regulations include the following definition of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

## Standard of Review

The Social Security Act defines disability, in pertinent part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant will only be found disabled if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court conducts "a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also* 42 U.S.C. § 405(g). "Substantial evidence . . . is 'more than a mere scintilla.' It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted) (quoting *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard; facts found by the ALJ can be rejected "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). The court is mindful that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

On appeal, Plaintiff claims that substantial evidence does not support the ALJ's finding that he has the RFC to perform the amount of walking and standing required for light work. (Doc. 6 at 2.) Specifically, Plaintiff contends that the ALJ erred by (1) improperly evaluating his treating physicians' opinions of his ability to walk and stand and (2) failing to adequately consider evidence of pain and other symptoms. (*Id.* at 5–6.) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and free of legal error. (Doc. 7 at 1.)

### I. Treating Physicians' Opinions

Plaintiff argues that the ALJ failed to properly assess the opinions of treating physicians Dr. Jonathan Fenton and Dr. John Wright regarding Plaintiff's ability to walk and stand. The court accordingly begins with the treating-physician rule. The treating physician rule "generally requires a measure of deference to the medical opinion of a claimant's treating physician." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam); *see also* 20 C.F.R. § 404.1527.[3]

Under the treating-physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-

---

[3] Section 404.1527 has been revised effective March 27, 2017. *See generally Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Although the revised regulations eliminate the treating physician rule, those regulations apply only to cases filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Accordingly, the treating-physician rule applies to Plaintiff's claim, which was filed in May 2015. *See, e.g., Amy P. v. Comm'r of Soc. Sec.*, No. 2:17-CV-94, 2018 WL 2095345, at *4 n.1 (D. Vt. May 7, 2018) ("Because Plaintiff filed her claim before March 2017, . . . the court applies the treating physician rule under the earlier regulations (20 C.F.R. §§ 404.1527 and 416.927), and not under the more recent ones (20 C.F.R. §§ 404.1520c and 416.920c)."); *Hofman v. Comm'r*, No. 18CV6382, 2019 WL 2462292, at *3 (W.D.N.Y. June 13, 2019) (applying treating physician rule to claim filed in January 2015).

supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)).

If a treating physician's opinion is not given controlling weight, the ALJ must determine how much weight the opinion should receive based on several factors. 20 C.F.R. § 404.1527(c)(2)–(6). "[T]o override the opinion of the treating physician, [the Second Circuit] ha[s] held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (first and fourth alterations in original) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)). The Commissioner is required to give "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2).

"An ALJ's failure to 'explicitly' apply the factors when assigning weight at step two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Selian*, 708 F.3d at 419–20)). If "the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment]," the case must be remanded unless "a searching review of the record" assures the court "that the substance of the treating physician rule was not traversed." *Id.* (alterations in original) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004) (per curium)).

### A. Dr. Fenton

Dr. Fenton was Plaintiff's treating orthopedist from March 20, 2009 to December 9, 2009 and from September 12, 2011 until April 5, 2013. (AR 333–62.) During this time, Dr. Fenton regularly treated Plaintiff for hip, groin, and lower back pain, performing multiple physical

examinations (AR 337, 340, 346, 349, 356, 358, 363–64), diagnostic procedures (AR 345, 346, 361); platelet rich plasma and hyaluronic acid gel injections (AR 333, 340, 341, 342, 343, 351, 357); and tenotomies (AR 351, 353, 355).

According to Dr. Fenton's treatment notes, Plaintiff reported on January 31, 2013 that his right hip pain had worsened over the last several months. (AR 336.) He further reported that "[w]orking on cement floors still flares his pain" and that he did not "feel he can work in retail on concrete floors and lifting and loading." (*Id.*) Dr. Fenton then expressed the opinion that Plaintiff "should no longer have a lifting and loading job but a true sedentary job without the lifting and carrying." (*Id.*)

The ALJ assigned "little weight" to Dr. Fenton's January 31, 2013 opinion, reasoning that the opinion was rendered "almost one year prior to the alleged onset date" and was "solely based on [Plaintiff's] subjective statements regarding his limitations." (AR 20.) The ALJ also noted that Dr. Wright reported in May 2013 that Plaintiff was weaning off narcotics and was "OK to look for and return to work." (*Id.* (quoting AR 423).)

Plaintiff argues that the ALJ failed to comply with the treating-physician rule when assigning weight to Dr. Fenton's opinion. However, Plaintiff's last appointment with Dr. Fenton took place in April 2013, about eight months before the alleged onset date. Because Dr. Fenton was not a treating physician during the relevant period, the treating-physician rule does not apply his opinion. *Monette v. Astrue*, 269 F. App'x 109, 112 (2d Cir. 2008); *accord Rogers v. Astrue*, 895 F. Supp. 2d 541, 549 (S.D.N.Y. 2012) ("The treating physician rule . . . does not technically apply when the physician was not the treating physician at all during the relevant time period.").

But while "opinions from physicians who did not treat the claimant during the relevant time period are not entitled to controlling weight, . . . such opinions may be entitled to significant

weight." *Mura v. Colvin*, No. 16-CV-6159P, 2017 WL 2543939, at *5 (W.D.N.Y. June 13, 2017) (internal citations omitted). In particular, this court has held that an ALJ "'may consider . . . medical records and opinions dated prior to the alleged onset date,' when . . . there is no evidence of deterioration or progression of symptoms." *Burdick v. Colvin*, No. 2:14-CV-133-WKS-JMC, 2015 WL 8352320, at *7 (D. Vt. Nov. 17, 2015), *report and recommendation adopted*, 2015 WL 8481849 (D. Vt. Dec. 9, 2015) (quoting *Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007) and citing *Ward v. Shalala*, 898 F. Supp. 261, 263 (D. Del. 1995)). "In any event, ALJs must evaluate all opinionative evidence, regardless of its source, based upon the factors outlined in 20 CFR § 404.1527(c)." *Padilla v. Berryhill*, No. 15 Civ. 9312 (VB) (LMS), 2018 WL 3598766, at *11 (S.D.N.Y. June 22, 2018), *report and recommendation adopted*, 2018 WL 3597639 (S.D.N.Y. July 26, 2018).

Here, Dr. Fenton regularly treated Plaintiff for hip, groin, and lower back pain over a combined period of over two years, including nine appointments between September 2011 and April 2013. Nothing in the record suggests that Plaintiff's condition changed significantly after he stopped receiving treatment from Dr. Fenton. Rather, the record indicates that Plaintiff continued to suffer from hip, groin, and lower back pain—the same ailments Dr. Fenton had treated—throughout the relevant period.

The ALJ appeared to infer that Plaintiff's condition improved after Dr. Fenton opined that he was limited to sedentary work, pointing to Dr. Wright's notes from May 2013 that Plaintiff was weaning off narcotics and was "OK to look for and return to work." But as Plaintiff points out, Dr. Fenton's opinion is facially consistent with a release to look for and return to work. Dr. Fenton did not opine that Plaintiff was completely unable to work; rather, he concluded that Plaintiff could only perform "sedentary" work.

Moreover, the ALJ improperly characterized Dr. Wright's conservative treatment plan as substantial evidence that Plaintiff could perform more than sedentary work during the relevant period. ALJs "may not 'impose[ ] their . . . notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.'" *Burgess*, 537 F.3d at 129 (alterations in original) (quoting *Shaw v. Chater*, 221 F.3d 126, 134–35 (2d Cir. 2000)); *see also id.* at 131 ("Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion' . . . , or indeed for any 'competent medical opinion' . . . ." (first quoting *Shaw*, 221 F.3d at 134, then quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998))). The fact that Plaintiff's treatment plan involved tapering off his reliance on narcotics does not, on its own, constitute "the overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion." *Id.* at 130 (quoting *Shaw*, 221 F.3d at 135).

Finally, the Commissioner argues that the ALJ properly assigned Dr. Fenton's opinion little weight because his statement was based solely on Plaintiff's subjective complaints. Although the ALJ correctly noted that Dr. Fenton did not perform a physical examination on the day he rendered his opinion, the record contains years of Dr. Fenton's treatment notes. (*See* AR 333–74.) These records contain evidence that arguably substantiated limitations in walking and standing. For example, on September 5, 2012, Dr. Fenton performed a FADDIR (flexion-adduction-internal rotation) test that induced positive groin pain and noted that additional platelet rich plasma injections were "unlikely to improve [Plaintiff's] standing and walking tolerance at work." (AR 337.) The ALJ therefore improperly speculated that Dr. Fenton based his opinion on Plaintiff's subjective complaints rather than the objective medical findings documented in his treatment notes. *Haines v. Astrue*, No. PWG-08-1502, 2010 WL 4294623,

at *2 (D. Md. Oct. 29, 2010) (citing *Foxman v. Barnhart*, 157 F. App'x 344, 347 (2d Cir. 2005); *see also Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *4 (W.D.N.Y. Mar. 15, 2019) (rejecting ALJ's reasoning that medical opinion "did not include detailed examination notes [where] the record as a whole did").

In sum, although Dr. Fenton's opinion is not entitled to controlling weight, the court concludes that the ALJ nevertheless erred in discrediting Dr. Fenton's opinion.

**B.    Dr. Wright**

Dr. Wright has been Plaintiff's primary care provider since at least 2011. (*See* AR 452; *but see* AR 218 (reporting first visiting Dr. Wright on March 12, 2007).) Dr. Wright completed an assessment of Plaintiff's physical RFC on June 9, 2015. (AR 469–72.) In that statement, Dr. Wright listed Plaintiff's diagnoses of right inguinal, right labral tear, and degenerative joint disease of the lumbar spine. (AR 469.) Among other areas of physical functioning, Dr. Wright offered several opinions on Plaintiff's ability to stand and walk.[4] He opined that Plaintiff can stand for 45 minutes and walk for one hour without needing to change position. (AR 470.) He further opined that Plaintiff can stand or walk for a total of two hours over the course of an eight-hour workday. (*Id.*) Additionally, Dr. Wright indicated that Plaintiff needs a job that permits shifting positions at will between sitting and standing or walking. (AR 471.) He opined that Plaintiff is unable to stay positioned at a work station with a combination of sitting and standing for an eight-hour day without needing to leave the work station to relieve symptoms. (*Id.*)

---

[4] Dr. Wright provided a fairly comprehensive assessment of Plaintiff's physical functioning. However, Plaintiff does not contend that his treating physicians' opinions "should be given greater weight with respect to all areas of functioning," instead claiming only that the ALJ "does not give sufficiently good reasons to dismiss the treating physician's opinions with respect to the Plaintiff's ability to walk and stand." (Doc. 6 at 5–6.) Accordingly, the court limits its review of Dr. Wright's opinion those portions relevant to evaluating Plaintiff's ability to walk and stand.

11

The ALJ assigned "little weight" to all of Dr. Wright's opinions, reasoning that the statement "contains several internal inconsistencies and inconsistencies with the record." (AR 20.) The ALJ then noted that Dr. Wright completed his opinion after the relevant period, and that he "had considered evidence after the date last insured to assess [Plaintiff's] residual functional capacity at the date last insured"—i.e. "to the extent [such evidence] may reveal worsening in symptoms or physical functioning before the date last insured." (AR 20–21.) The ALJ concluded Dr. Wright's opinion was entitled to little weight for the following reasons:

> [C]ontemporary treatment records through early 2015 merely described tenderness in the lumbar spine with decreased range of motion. Similarly, the claimant's last appointment with Dr. Wright in May 2016, the claimant demonstrated normal gait, motor strength, and muscle bulk. Both medical records and physical therapy notes describe improvement in pain with physical therapy and initiation of medical marijuana while reducing narcotic mediation [sic]. . . . [P]hysical therapy notes in April 2014 describe significant progress towards the claimant's therapy goals. Finally, there is no basis of worsening in symptoms and functional difficulties to support Dr. Wright's restrictive residual functional capacity two years after his conclusion of May 2013 that the claimant could return to work.

(AR 20–21 (internal citations removed).)

As an initial matter, the ALJ erred by failing to "'explicitly consider' . . . the frequency, length, nature, and extent of [Dr. Wright's] treatment" when assigning weight to his opinion. *Estrella*, 925 F.3d at 96 (quoting *Selian*, 708 F.3d at 418.) Notably, at no point does the decision mention the fact that Dr. Wright has regularly treated Plaintiff for hip, groin, and back pain since at least 2011, with the record documenting monthly appointments during the relevant period.

Further, after reviewing the record, the court finds that the ALJ failed to comply with the substance of the treating physician rule when evaluating Dr. Wright's opinions regarding Plaintiff's ability to walk and stand. First, the ALJ relied on a mischaracterization of the record to reject these opinions. The ALJ found that "Dr. Wright's assessment that [Plaintiff] can . . . stand only two hours[] and walk only two hours in an eight-hour day is inconsistent with his

contemporary opinion that [Plaintiff] can . . . stand up to forty-five minutes[] and walk up to one hour at a time without needing to change position." (AR 20.) However, it is facially consistent for Dr. Wright to find that Plaintiff can walk or stand for 45 minutes to an hour continuously and for two hours total, particularly since he also opined that Plaintiff requires a job that allows him to alternate positions at will (*see* AR 471). *Cf. Micheli v. Astrue*, 501 F. App'x 26, 28–29, 29 n.3 (2d Cir. 2012) (finding medical opinion internally inconsistent when treating physician opined that the claimant could "stand or walk for only 15 minutes continuously and for two hours total" but did not need "to either alternate positions or rest").

    The ALJ also asserted that Dr. Wright's opinion that Plaintiff is unable to stay positioned at a work station for an eight-hour day was internally inconsistent with his contemporary opinion that Plaintiff's "symptoms would likely not cause him to be off-task." (AR 20.) But Dr. Wright specifically opined that Plaintiff's symptoms would not cause him "to be off-task *doing simple work*." (AR 20 (emphasis added).) "Simple work" refers to the amount of skill required to perform certain job functions, not exertional requirements like standing. *See* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); *see also Barca v. Comm'r of Soc. Sec.*, No. 2:16-CV-187, 2017 WL 3396416, at *5 (D. Vt. Aug. 8, 2017) (defining "simple" in relation to "simple, unskilled work" as "not involved or complicated; easy to understand or do" (quoting *Simple*, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/English/simple (last visited Aug. 8, 2018))). Put another way, the fact that a claimant's symptoms do not restrict his ability to perform simple job duties has no bearing on whether he has standing limitations. *Cf. Batease v. Berryhill*, No. 2:16-CV-133-JMC, 2017 WL 1102659, at *5 (D. Vt. Mar. 24, 2017) ("[B]asic communication . . . is all that is needed to do unskilled work, and the ability to

hear and understand simple oral instructions or to communicate simple information is sufficient.").

In short, the court can discern no basis for finding that Dr. Wright's walking and standing opinions contradicted each other or any other findings in his assessment. Without further explanation, the ALJ's conclusory statement that these opinions are internally inconsistent mischaracterizes the record. *Barco v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 913, 920 (W.D.N.Y. 2018). "[A] reason . . . that relies on a mischaracterization of the record cannot be a good reason" for disregarding a treating source's opinion. *Id.* at 919 (quoting *Wilson v. Colvin*, 213 F. Supp. 3d 478, 485 (W.D.N.Y. 2016)).

The ALJ also indicated that Dr. Wright's opinions are unsupported by his own treatment notes. In particular, the ALJ discussed medical records showing generally "benign" clinical findings, noting that "[p]ositive clinical findings were limited to tenderness and reduced range of motion and emphasizing that "Dr. Wright did not observe significant neurological deficits such as diminished strength, altered sensation, or abnormal gait." (AR 19; *see also* AR 21.) But these findings are not necessarily inconsistent with Dr. Wright's opinion that Plaintiff suffered from chronic hip, groin, and lower back pain that limited his ability to walk and stand on a regular and continuing basis. *See Southgate v. Colvin*, No. 2:14-CV-166, 2015 WL 6510412, at *8 (D. Vt. Oct. 28, 2015) (finding that "generally mild clinical findings . . . are not necessarily inconsistent with [a treating physician's] opinion that [the claimant] suffered from chronic back and neck pain . . . [that] prevented him from performing sustained work activities"). Moreover, the ALJ does not explain the connection between the noted "neurological deficits" and Plaintiff's alleged pain and restricted mobility. Instead, the ALJ appears to have improperly substituted his own lay interpretation of the objective medical evidence for Dr. Wright's. *Id.* (citing *Balsamo v.*

*Chater*, 142 F.3d 75, 81 (2d Cir. 1998)); *see also Wolfe v. Colvin*, No. 7:12-CV-0987 NAM/VEB, 2013 WL 5974225, at *5 (N.D.N.Y. Nov. 8, 2013) ("[T]he ALJ is not a medical professional and is not in a position to opine as to whether abnormalities characterized as 'mild' . . . might nevertheless cause significant pain or other limitations.").

Additionally, the ALJ erred in discounting Dr. Wright's opinion without adequately developing the record. "[T]he Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's [opinion]." *Selian*, 708 F.3d at 420 (quoting *Burgess*, 537 F.3d at 129). "If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Here, the ALJ improperly failed to address two significant gaps in the record relating to Dr. Wright's opinion.

First, the record was missing evidence on which Dr. Wright relied in formulating his opinion. Although the ALJ found that Dr. Wright's diagnosis of degenerative joint disease of the lumbar spine was not supported by objective medical evidence, Dr. Wright noted that his assessment of Plaintiff's condition was based partly on "imaging studies . . . [of Plaintiff's] lumbar spine." (AR 496.) Because—as the ALJ correctly observed—the record contains no such imaging studies, there was a "clear gap" in the record. Accordingly, the ALJ was obligated to request this evidence from Dr. Wright before rejecting his opinion.

Second, the ALJ erred in concluding that Dr. Wright's opinion did not apply to the relevant period without first recontacting Dr. Wright for additional information. The Commissioner maintains that the ALJ properly discredited Dr. Wright's opinion because it

postdates the date last insured. (Doc. 7.) While it is true that Dr. Wright completed the assessment about nine months after the date last insured, this fact alone is not a sufficient reason to reject his opinion. Rather, "opinions of treating physicians are 'binding in the absence of substantial evidence to the contrary even if the treating physician[s'] evaluations [were] made after the last date on which the claimant met the special earnings requirement.'" *McAllister v. Colvin*, 205 F. Supp. 3d 314, 332 (E.D.N.Y. 2016) (second and third alterations in original) (quoting *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015)); *see also Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 15–16 (2d Cir. 2018) ("[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." (first alteration in original) (quoting *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003))).

Although Dr. Wright's opinion does not specify whether it is retrospective, the ALJ improperly failed to recontact Dr. Wright to determine whether the limitations he identified applied to the relevant period or whether he could assess Plaintiff's functional capacity during the relevant period. *See Brown v. Astrue*, 4 F. Supp. 3d 390, 400 (N.D.N.Y. 2012) ("[T]he ALJ incorrectly discounted [the treating physician's] assessment because it was rendered after the date last insured without first requesting a retrospective opinion."). As previously noted, Dr. Wright has regularly treated Plaintiff for hip, groin, and back pain since at least 2011 and saw him on a monthly basis during the relevant period. This longstanding treatment relationship and familiarity with the impairments giving rise to Plaintiff's disability claim indicates that Dr. Wright would be able to provide a retrospective opinion of Plaintiff's functional abilities during the relevant period. "Under these circumstances, the ALJ should have recontacted [the treating

physician] to attempt to determine whether his opinions were intended to be retrospective and, if not, to attempt to obtain one for the relevant period." *Bellucco v. Colvin*, No. 15-CV-6483P, 2016 WL 5334438, at *16 (W.D.N.Y. Sept. 23, 2016).

The ALJ compounded these errors by selectively citing Dr. Wright's treatment records. "[A]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Amy P. v. Comm'r of Soc. Sec.*, No. 2:17-CV-94, 2018 WL 2095345, at *6 (D. Vt. May 7, 2018) (quoting *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016)). Here, the ALJ improperly "cherry-picked" from Dr. Wright's treatment notes, relying on statements that supported his RFC while ignoring other substantive details. For example, the ALJ noted that on January 2014 Dr. Wright characterized Plaintiff's complaints as "mild" and, "[i]n an apparent inconsistency," stated that it "does not limit activities and moderately limits activities." (AR 19.) However, the decision does not mention that in subsequent treatment notes, Dr. Wright consistently characterizes Plaintiff's complaints as "moderate" and states that it "moderately limits activities." (AR 387, 389, 393, 395, 399, 401, 403).

Finally, the opinion of Dr. Leslie Abramson, a State Agency reviewing physician, does not provide a good reason for discounting Dr. Wright's assessment of Plaintiff's walking and standing limitations. After reviewing Plaintiff's medical records in July 2015, Dr. Abramson opined that Plaintiff could stand or walk for a total of six hours in an eight-hour workday. (AR 81.) The ALJ assigned "greater weight" to Dr. Abramson's assessment of Plaintiff's exertional limitations, reasoning that these opinions are "consistent with and well-supported by the objective medical evidence" and "not contradicted by the evidence received at the hearing level." (AR 21.)

17

"Generally, where, as here, there are conflicting opinions between treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'" *Mead v. Colvin*, No. 5:13-CV-71, 2014 WL 1165836, at *8 (D. Vt. Mar. 21, 2014) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). "This is particularly true where the consultant did not examine the claimant and made their opinions without considering the relevant treating source opinions." *Id.* (citing *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) and *Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011)). Here, Dr. Abramson did not examine Plaintiff or review Dr. Wright's opinion before preparing her report. In her opinion, Dr. Abramson states that the record did not contain any medical opinion evidence, indicating that she did not have access to Dr. Wright's medical opinion at the time she assessed Plaintiff's RFC. Because Dr. Abramson did not review all of Plaintiff's relevant medical information, her opinion is not "supported by evidence of record" as required to override the opinion of a treating physician. *Tarsia*, 418 F. App'x at 18; *see also Mead*, 2014 WL 1165836 at *8 (finding ALJ erred by assigning significant weight to the opinion of an agency consultant who neither examined plaintiff nor considered medical opinions submitted after her review of the plaintiff's claim). Accordingly, Dr. Abramson's opinion does not provide a "good reason" for discrediting Dr. Wright's opinions regarding Plaintiff's walking and standing limitations.

Overall, on the issue of Plaintiff's ability to stand and walk, the court concludes that the ALJ's reasons for discounting Dr. Wright's opinions do not constitute "good reasons." This conclusion also informs the court's review of the opinions of Dr. Fenton: the errors identified above appear less likely to be harmless. The ALJ's errors with respect to Plaintiff's treating physicians are sufficient to warrant a remand.

## II. Disposition

For all of the above reasons, the court concludes that the decision of the Commissioner should be reversed and that this case should be remanded. Remand for further development of the record is appropriate "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 82–83 (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). Here, the errors that the court has identified concern the application of the proper legal standards. Remand for further proceedings is therefore the proper course in this case.

Accordingly, the court does not reach Plaintiff's other arguments. Although the court is not addressing Plaintiff's arguments concerning the ALJ's subjective symptom evaluation, the Commissioner should consider that issue on remand after properly reweighing the medical opinion evidence.

## Conclusion

Plaintiff's motion to reverse the Commissioner's decision (Doc. 6) is GRANTED, and the Commissioner's motion to affirm the Commissioner's decision (Doc. 7) is DENIED. The case is REMANDED for further proceedings and a new decision.

Dated at Rutland, in the District of Vermont, this 19th day of August, 2019.

Geoffrey W. Crawford, Chief Judge
United States District Court